UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
AT DAYTON

| | | |
|---|---|---|
| STEVEN M. WILLIAMS, | : | CASE NO. C-3-04-cv-00117 |
| Plaintiff, | : | |
| v. | : | **Magistrate Judge Michael Merz** |
| DAYTON POLICE DEPT., et al. | : | AFFIDAVIT OF DETECTIVE THOMAS E. RACHLOW |
| Defendants. | : | |

STATE OF OHIO )
) ss:
COUNTY OF MONTGOMERY )

Detective Thomas E. Rachlow, after being duly cautioned and sworn, states the following:

1. I have personal knowledge of all information contained in this affidavit and I am competent to testify to all of the facts contained in this affidavit and to testify to all matters stated herein.

2. I am now currently and have been with the City of Dayton Police Department for over 14 years.

3. On April 8, 2004, I was requested to back up Dayton Police Officer Eversole in response to a drug complaint at 112 N. Sperling Ave. in Dayton, Ohio to investigate drug complaints. I was familiar with the location and knew that it had been nuisance abated for drug issues in September of 2003



DEFENDANT'S EXHIBIT 4

and that there had been drug complaints concerning the location after the nuisance abatement.

4. The complaint we were responding to indicated that numerous people had been entering and exiting the home and specifically mentioned several females and two males inside the resident.

5. Officer Eversole and Sgt. McCune went to the front door and I went to the alley behind the house. Subsequently, Officer Eversole called me on my portable radio and asked me to come to the front door. I went into the front door and saw three women in the living room.

6. Officer Eversole notified me that one of the women, Ms. Lori Combs-Wright, was wanted on a warrant and asked me to watch her while Sgt. McCune and Officer Eversole performed a protective sweep.

7. At no time did I or the other officers I was there with that day perform any search of the home other than the protective sweep. Further, none of the officers opened Mr. William's mail or otherwise violated Mr. William's rights.

Further affiant sayeth naught.

_____
Det. Thomas E. Rachlow

Sworn to before me, a Notary Public in and for the State of Ohio, and subscribed in the presence by the said Det. Thomas E. Rachlow this 30th day of September 2005.

_____
Notary Public

JOHN C. MUSTO Attorney at Law
Notary Public, State of Ohio
My Commission has no expiration date.
Section 147.03 O. R. C.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
AT DAYTON

| | | |
|---|---|---|
| STEVEN M. WILLIAMS, | : | CASE NO. C-3-04-cv-00117 |
| Plaintiff, | : | |
| | | **Magistrate Judge Michael Merz** |
| v. | : | |
| DAYTON POLICE DEPT., et al. | : | <u>AFFIDAVIT OF OFFICER</u><br><u>SGT. MICHAEL A. McCUNE</u> |
| Defendants. | : | |

STATE OF OHIO )
 ) ss:
COUNTY OF MONTGOMERY )

Officer Sgt. McCune, after being duly cautioned and sworn, states the following:

1. I have personal knowledge of all information contained in this affidavit and I am competent to testify to all of the facts contained in this affidavit and to testify to all matters stated herein.

2. I am now currently and have been with the City of Dayton Police Department as an Officer since February 1976, and I have been a Sgt. Since 1986.

3. On April 8, 2004, I was requested to back up Dayton Police Officer Eversole in response to a drug complaint at 112 N. Sperling Ave. in Dayton, Ohio to investigate drug complaints. I was familiar with the location and knew that it had been nuisance abated for drug issues in September of 2003



DEFENDANT'S EXHIBIT 5

and that there had been drug complaints concerning the location after the nuisance abatement.

4. The complaint we were responding to indicated that numerous people had been entering and exiting the home and specifically mentioned several females and two males inside the resident.

5. Officer Eversole knocked on the front door, notified whoever was inside that we were police and asked that they open the door. A woman's voice responded that she was going to ask the owner if she could let us in. After a few moments she came back to the door and let us in.

6. Officer Eversole entered the house and I could see three females in the living room, two were laying on the floor. Subsequently, Officer Eversole yelled for me to come into the house to assist him with the arrest of Ms. Wright-Combs and to help perform a protective sweep of the house.

7. At no time did I or the other officers I was there with that day perform any search of the home other than the protective sweep. Further, none of the officers opened Mr. Williams mail or otherwise violated Mr. William's rights.

Further affiant sayeth naught.

_____
Sgt. Michael McCune

Sworn to before me, a Notary Public in and for the State of Ohio, and subscribed in the presence by the said Sgt. Michael McCune this 30th day of September 2005.

_____
Notary Public

JOHN C. MUSTO, Attorney at Law
Notary Public, State of Ohio
My Commission has no expiration date.
Section 147.03 O. R. C.

Westlaw.

Not Reported in N.E.2d

Page 1

Not Reported in N.E.2d, 1998 WL 199632 (Ohio App. 2 Dist.)

**(Cite as: 1998 WL 199632 (Ohio App. 2 Dist.))**

C
Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Second District,
Montgomery County.
CITY OF DAYTON, Plaintiff-Appellant,
v.
William H. LOWE, Defendant-Appellee.
No. 16651.

April 24, 1998.
J. ANTHONY SAWYER, Director of Law, JOHN J. SCACCIA, Chief Prosecutor, STEVEN R. MILBY, Senior Assistant Attorney, By: RAYMOND L. BILOTT, Assistant City Prosecutor, 335 West Third Street, Dayton, Ohio 45401, Atty. Reg. # 0022220, Attorneys for Plaintiff-Appellant.

EDWARD B. NEUMAN, 204 South Ludlow Street, Suite 209, Dayton, Ohio 45402, Atty. Reg. # 00022211 Attorney for Defendant-Appellee.

*OPINION*

YOUNG, P.J.

*1 The city of Dayton appeals from a judgment of the Dayton Municipal Court dismissing criminal charges against appellee William H. Lowe for unauthorized entry upon a nuisance premises and obstructing official business.

The city advances five assignments of error. First, it contends the trial court erred by dismissing the criminal complaints against Lowe rather than simply suppressing certain evidence. In its other four assignments of error, the city argues in various ways that the trial court erred by effectively overturning a prior, unappealed determination that Lowe's home constituted a public nuisance.

The present appeal stems from the October 21, 1996, entry into Lowe's home by members of the Dayton police department. Upon searching the home, the officers discovered crack pipes, firearms, marijuana, and suspected crack cocaine residue on a table and plate. Based upon this evidence, an officer deemed the home a public nuisance and issued a public nuisance notice to Lowe. The notice informed Lowe that he could appeal the nuisance determination within fifteen days. Lowe failed to file an appeal with the nuisance appeals board, however, until months later. The board dismissed his appeal as untimely on February 7, 1997. Lowe never appealed that ruling.

Additionally, on December 6, 1996, criminal complaints were filed in Dayton Municipal Court, charging Lowe with two counts of unauthorized entry upon a nuisance premises and obstructing official business. These charges stemmed from Lowe's failure to vacate the home as required by the nuisance notice. Lowe responded with a motion to suppress/dismiss filed on May 23, 1997. Following a hearing on Lowe's motion, the trial court filed a June 16, 1997, decision and entry dismissing the charges against Lowe.

In support of its ruling, the trial court noted that the evidence discovered in Lowe's home already had been suppressed in a separate criminal prosecution for permitting drug abuse. The judge in the criminal case had found the officers' entry into the home unlawful. Given this fact, the trial court in the present case reasoned:
  "It is undisputed that the illegal drugs found in the subject premises were ordered suppressed by Judge Cannon in case no. 96-CRB-14318. Without the existence of those illegal drugs, the issuance of the public nuisance order could not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

DEFENDANT'S EXHIBIT 6

Not Reported in N.E.2d

Not Reported in N.E.2d, 1998 WL 199632 (Ohio App. 2 Dist.)

**(Cite as: 1998 WL 199632 (Ohio App. 2 Dist.))**

Page 2

have been made. To date the Montgomery County Prosecutor's office has not taken a felony drug filing on this matter, which is exactly the charge initiated against defendant on the public nuisance order, see exhibit '3', supra. Although defendant did not timely file his appeal to the plaintiff's code enforcement & rehabilitation division within fifteen (15) days of his receipt of the notice, it seems rather draconian to now take away defendant's use of his real estate due to missing this 'administrative appeal' date. It bears noting that defendant did not run and hide his head in the sand on these charges, rather he hired legal counsel and fought them in the criminal division of this court not only in the case at bar but also in the case on Judge Cannon's docket.

*2 The defendant has invited the court to declare R.C.G.O. Sec. 152.01(E)(2) to be unconstitutional and although it does appear inviting given the facts of this case, the court will, at this time, respectfully decline the invitation. Simply stated, bad facts make bad law.

When the illegal drugs were suppressed by Judge Cannon, the foundation upon which all three charges now pending herein are based, turned to quick sand. Without that foundation, the three charges cannot stand. Fundamental fairness dictates no less in this matter.

It is therefore ordered, adjudged and decreed that defendant's motion to dismiss be and hereby is granted. The charges herein pending against defendant are hereby dismissed with prejudice. Costs to plaintiff."

Following the trial court's dismissal of the unauthorized-entry-upon-a-nuisance and obstructing-official-business charges against Lowe, the city filed a timely notice of appeal, raising five assignments of error. Given their similarity, we will consider the city's second, third, fourth, and fifth assignments of error together. We also will discuss these assignments of error first.

II.
"The trial court committed prejudicial error in refusing to give res judicata effect to an earlier, unappealed nuisance abatement proceeding, thereby failing to estop the appellee from relitigating the underlying basis of the criminal charge."

III.
"The trial court committed prejudicial error in concluding that the unappealed nuisance abatement proceeding must be suppressed."

IV.
"The trial court committed prejudicial error in dismissing the complaints in this case upon the ground of an unlawful search and seizure, where no evidence essential to the prosecution of the case was found to have been produced by the search and seizure."

V.
"The trial court committed prejudicial error in sustaining a motion to suppress evidence in a misdemeanor criminal case based upon a claimed unlawful search and seizure, where an administrative appeal process preceded the filing of the misdemeanor criminal complaint, where the defendant had notice of that administrative process, where the defendant failed to raise that issue and to exhaust his administrative remedies when he had an opportunity to do so in the administrative appeal process, where the parties to both proceedings were the same, and where the prosecuting attorney made an appropriate objection upon those grounds."

In these assignments of error, the state contends, with slight variations, that the trial court erred by effectively declaring the public nuisance order invalid. The state specifically challenges the trial court's determination that because evidence was suppressed in a separate criminal case, the nuisance-related charges "cannot stand." In support, the state stresses that the unappealed order declaring Lowe's home a nuisance became final fifteen days after issuance. Consequently, the state reasons that the issue before the court in the present case was simply whether Lowe occupied a public nuisance *and not* whether the home should have been declared a nuisance in the first place.

*3 In response, Lowe argues at length that his

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d

Not Reported in N.E.2d, 1998 WL 199632 (Ohio App. 2 Dist.)

**(Cite as: 1998 WL 199632 (Ohio App. 2 Dist.))**

Page 3

failure to challenge the nuisance order administratively should not prevent him from challenging the order now. Lowe's brief raises a number of arguments explaining why his failure to exhaust administrative remedies should not prevent him from raising constitutional and non-constitutional challenges to the nuisance order. Among other things, Lowe argues that no evidence exists to support the public nuisance order. He also contends that the procedure for declaring his home a public nuisance is unconstitutional and that the city's public nuisance statute itself is unconstitutional. Lowe then cites case law for the proposition that exhaustion of administrative remedies is unnecessary when a party raises constitutional issues.

Assuming *arguendo* that Lowe was not required to exhaust administrative remedies, we still find the city's arguments persuasive. Lowe might have been able to raise constitutional challenges to the public nuisance order without first pursuing an administrative appeal. We need not debate that issue, however, because the procedure for doing so would have been to challenge the order in the common pleas court before the order became final. Lowe failed to do so, and he may not collaterally attack the order's validity in a separate criminal case charging him with unauthorized entry upon a nuisance premises and obstructing official business.

As the state properly notes, the only relevant issues in the present case were (1) whether Lowe occupied a public nuisance and (2) whether he obstructed official business. The issue of whether Lowe's residence *should have been* declared a public nuisance was not properly before the court. That issue could have been litigated through an administrative appeal to the nuisance board and/or through an appeal to the common pleas court. Lowe failed to challenge the order, however, and it subsequently became final.

In *City of Dayton v. Sheibenberger* (1986), 33 Ohio App.3d 263, 515 N.E.2d 948, this court considered the appeal of a defendant who was prosecuted for failing to obey a legal order after ignoring an order to remove several piles of lumber from his property. In finding the defendant guilty, the trial court had refused to examine the validity of the housing inspector's order. The trial court had reasoned that the defendant could not challenge the order's validity because he neglected to initiate timely administrative appeal proceedings after the order's issuance. *Id.* at 264, 515 N.E.2d 948. Upon review, this court agreed, noting that "the initial order of the housing inspector finding noncompliance gave rise to a separate avenue of appeal; appellant's avenue to challenge the validity of the initial order was before the Dayton Housing Appeals Board and not by way of an affirmative defense to the criminal action." *Id;* see also *City of Wauseon v. Plassman* (Feb. 25, 1994), Fulton App. No. 93FU000006, unreported, citing *Sheibenberger.* More recently, in *City of Dayton v. Fuhrman* (Aug. 30, 1990), Montgomery App. No. 11845, unreported, we stated:

*4 " * * * While the appellant was not required to raise his constitutional objections before the Administrative Housing Appeal Board, he was required to raise these constitutional objections when the opportunity presented itself with an appeal to the Common Pleas Court through its jurisdiction to entertain administrative appeals. In other words, appellant had ten days to appeal the order of the inspector. If the Housing Appeal Board provided him no relief, his remedy was to appeal to the Common Pleas Court. He did not, but now nearly two years later seeks to raise his constitutional objections to the actions of the City in an appeal of his criminal prosecution."

Similarly, in the present case, Lowe's avenue to challenge the nuisance order's validity was through an appeal to the city's Nuisance Appeals Board, or possibly to the common pleas court if he believed exhaustion of administrative appeals was unnecessary for presentation of his constitutional arguments. Lowe may not raise issues related to the nuisance order's validity, however, as a defense to criminal charges for violating the order. *Sheibenberger, supra; Plassman, supra.* Thus, the trial court erred by dismissing the charges against Lowe, and we sustain the city's second through fifth assignments of error.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d

Not Reported in N.E.2d, 1998 WL 199632 (Ohio App. 2 Dist.)

**(Cite as: 1998 WL 199632 (Ohio App. 2 Dist.))**

I.

"The trial court committed prejudicial error in dismissing the complaints in this case upon the ground of a purportedly unlawful search and seizure."

In this assignment of error, the city provides an alternative argument why the trial court erred in dismissing the criminal complaints against Lowe. Given our resolution of the city's second through fifth assignments of error, however, we find this assignment of error moot. Consequently, pursuant to App.R. 12(A)(1)(c), we need not address it.

Having determined that the trial court improperly dismissed the criminal complaints against Lowe, we hereby reverse the judgment of the Dayton Municipal Court, Criminal Division, and remand this cause for further proceedings.

FAIN, J. and GRADY, J., concur.

Not Reported in N.E.2d, 1998 WL 199632 (Ohio App. 2 Dist.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.